IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENNIFER L. REYES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-311-DES |
| ) | |
| MARTIN O'MALLEY,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jennifer L. Reyes ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claims for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.      Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

---

[1] Effective December 20, 2023, Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d). No further action is necessary to continue this suit by reason of 42 U.S.C. § 405(g).

Social security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform her past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007).  If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g).  The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020).  Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938).  In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted).  Rather, the Court must "meticulously examine the record as a whole, including anything that

may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.   Claimant's Background and Procedural History

In October 2020, Claimant applied for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Act. (R. 283-91). Claimant alleges she has been unable to work since an amended onset date of March 5, 2020, due to fibromyalgia, fatty liver disease, degenerative disc disease, depression, anxiety, rheumatoid arthritis, urinary incontinence, and migraine headaches (R. 292, 311). Claimant was 39 years old on the date of the ALJ's decision. (R. 26, 283, 285). She has a high school education and past work as an office manager and department manager. (R. 40, 57, 312).

Claimant's claims for benefits were denied initially and on reconsideration, and she requested a hearing. (R. 86-171, 210-11). ALJ Kevin Batik conducted an administrative hearing and issued a decision on March 22, 2022, finding Claimant not disabled. (R. 15-26, 33-61). The Appeals Council denied review on September 8, 2022 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. §§ 404.981, 416.1481. Claimant filed this appeal on November 4, 2022. (Docket No. 2).

## III.   The ALJ's Decision

In his decision, the ALJ found Claimant met the insured requirements for Title II purposes through March 31, 2023. (R. 17). The ALJ then found at step one that Claimant had not engaged in substantial gainful activity since the amended alleged onset date of March 5, 2020. (*Id*.). At step two, the ALJ found Claimant had severe impairments of degenerative disc disease of the lumbar spine, fibromyalgia, rheumatoid arthritis, osteoarthritis of the hands, generalized anxiety disorder, major depressive disorder, and posttraumatic stress disorder

("PTSD"). (*Id*.). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 18-20).

Before proceeding to step four, the ALJ determined Claimant had the RFC to perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a) with the following non-exertional limitations:

> frequently reach, handle, finger, feel with the bilateral upper extremities, climb ramps and stairs, balance, stoop, kneel, crouch, crawl. The claimant can occasionally climb ladders, ropes, or scaffolds. The claimant is limited to understand, remember, and carryout simple tasks and instructions, and occasionally interact with co-workers, supervisors and the public.

(R. 20). The ALJ provided a summary of the evidence that went into this finding. (R. 20-24).

At step four, the ALJ concluded that Claimant could not return to her past relevant work. (R. 24). Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Claimant could perform other work existing in significant numbers in the national economy, including document preparer, touch up screener, and nut sorter. (R. 25). Accordingly, the ALJ concluded Claimant was not disabled. (R. 26).

**IV.     Issues Presented**

Claimant contends the ALJ erred by: (1) failing to support the RFC with substantial evidence (Docket No. 14 at 8-11), and (2) failing to properly evaluate the consistency of her subjective allegations (*id.* at 11-14). The Court finds no error in the ALJ's decision.

**V.      Analysis**

    **A.     ALJ's RFC is Supported by Substantial Evidence**

A claimant's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week, despite her medical impairments and symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). As part of the RFC

assessment, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. *Id.* at *7. Stated differently, the ALJ must explain the basis for the limitations included in the RFC, with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence" of record were considered and resolved. *Id.* Furthermore, if the RFC conflicts with a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id.*

Claimant contends that the ALJ's RFC is not supported by substantial evidence. Specifically, Claimant asserts there is no evidence that she can frequently use her hands and that the ALJ failed to explain how he arrived at the RFC limitation regarding Claimant's ability to interact with co-workers and the public. (Docket No. 14 at 10). In essence, Claimant argues the RFC is not supported by substantial evidence because the manipulative limitations the ALJ identified do not coincide with any medical source opinion and because the ALJ failed to explain how the medical and non-medical evidence supports his determination that Claimant could occasionally interact with co-workers and the public. Neither argument is persuasive.

It is well established that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Ultimately, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). Here, in the absence of a medical source opinion regarding Claimant's manipulative limitations, the ALJ properly evaluated such limitations based on the record as a whole. *See, e.g.*, *McDonald v. Astrue*, 492 F.

App'x 875, 885-86 (10th Cir. 2012) (unpublished) (rejecting Plaintiff's "contention that an ALJ is not competent, in the absence of a medical opinion, to assess the severity of mental symptoms and determine the extent of the limitations that result based on the evidence in the claimant's medical records, her daily activities, and her positive response to medication").  Moreover, the ALJ's RFC was more restrictive than every medical source opinion of record, all of which identified no manipulative limitations. There is no "controlling authority holding that the full adverse force of a medical opinion cannot be moderated favorably" to a claimant. *Chapo*, 682 F.3d at 1288 (rejecting the argument that "an explanation for extending the claimant such a benefit" is required). Indeed, "if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit." *Id.*

The ALJ's decision also satisfies the narrative requirements as it relates to Claimant's social interaction limitations.  In assessing Claimant's social interaction limitations, the ALJ thoroughly discussed Claimant's testimony and the findings of her treating and reviewing physicians related to her mental impairments.  Specifically, the ALJ noted Dr. Hardin's March 2020, October 2020, November 2020, and December 2020 mental status examination findings; Dr. Johnson's March 2020 and November 2020 mental status examination findings; and Dr. Bajaj's July 2020 mental status examination findings.  (R. 23).  As part of his analysis of the medical source opinion evidence, the ALJ found persuasive the state agency psychologists' opinion that Claimant could perform simple tasks with social interaction limitations.  (R. 24). The ALJ explained that such opinions were consistent with the medical records showing poor insight, poor to fair judgment, slower than typical motor activity, flat affect, and anxious mood. (*Id.*) Notably, the longitudinal evidence does not reflect further limitations.  There is no medical

source opinion in the record that identifies social interaction limitations greater than those included in the RFC assessment, and the ALJ clearly considered the evidence of record in his decision. The Court thus finds the ALJ considered all the evidence related to Claimant's mental impairments and sufficiently explained how such evidence supported the RFC assessment. *See Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000) ("the ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence."). Because Claimant points to no evidence the ALJ overlooked, her arguments amount to a request that the Court reweigh the evidence and interpret in her favor, which it cannot do. *Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for that of the Commissioner's." (citations omitted).

  **B.**  **ALJ Properly Evaluated the Consistency of Claimant's Subjective Symptoms**

  Claimant contends the ALJ erred in evaluating her subjective symptoms because the ALJ did not consider all the relevant factors in Social Security Ruling ("SSR") 16-3p, related case law, and the regulations. (Docket No. 14 at 11-14).

  As part of the RFC determination, the ALJ is required to consider Claimant's subjective complaints, or symptoms.[2]  20 C.F.R. §§ 404.1529(a) &(d)(4), 416.929(a) &(d)(4). The Commissioner uses a two-step process to evaluate a claimant's symptoms.[3]  SSR 16-3p, 2017

---

[2] Symptoms are defined as a claimant's "own description of [her] physical or mental impairment." 20 C.F.R. §§ 404.1502(i), 416.902(n).

[3] The Tenth Circuit characterizes this analysis as a three-step process: (1) whether the claimant established a symptom-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some symptom of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all objective and subjective evidence, the claimant's symptom  *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen,* 834 F.2d 161, 163-64 (10th Cir. 1987)). The analysis under SSR 16-3p comports with this process, *Paulek v. Colvin,* 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). However,

WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. §§ 404.1529, 416.929. First, the medical signs or laboratory findings must establish a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p at *3. The ALJ then evaluates the intensity and persistence of the claimant's symptoms and determines how such symptoms limit her ability to perform work-related activities. *Id.*

Factors the ALJ considers when evaluating a claimant's symptoms include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medications; (5) treatment aside from medication; (6) any other measures the claimant has used to relieve the symptoms; and (7) other factors concerning functional limitations and restrictions due to symptoms. *Id.* at 7-8. The ALJ's symptom findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan,* 552 F.3d at 1190 (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10. Because symptom consistency findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determination when supported by substantial evidence." *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

---

the term "credibility" is no longer used. SSR 16-3p at *2. This analysis is now termed the "consistency" analysis. *Id.* In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill,* 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding SSR 16-3p consistent with the prior approach taken by the Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

The Court finds no error in the ALJ's consistency analysis. The ALJ summarized Claimant's administrative hearing testimony in his decision. (R. 22). He specifically acknowledged Claimant's testimony that she experiences pain and weakness in her hands; has difficulty writing, typing, using a knife, holding a phone, and holding coins; is unable to "move around a lot" due to right hip pain; can stand for 10 minutes and walk for 15 minutes; can lift a jug of water or milk with her right hand; experiences "flare-ups" in her hands and hips 3-4 times per week; easily becomes "side-tracked"; experiences crying episodes; and has problems with her memory and concentration. (R. 20-21). The ALJ then found Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.* In reaching this conclusion, the ALJ discussed a number of inconsistencies between Claimant's subjective allegations and the evidence of record, including: (1) imaging consistently documenting no more than mild degenerative changes; (2) numerous blood tests lacking elevated rheumatoid arthritis markers; (3) physical examinations without significant functional deficits, such as loss of strength, sensation, or mobility; (4) Claimant's conservative treatment for her physical impairments; (5) the limited treatment for Claimant's depression and anxiety; and (6) the lack of significant memory, attention, or other cognitive deficits in the record. (R. 21-23). The ALJ thus linked his consistency findings to the evidence and provided clear and specific reasons for his determination in compliance with the directives of *Cowan* and SSR 16-3p.

Claimant asserts that the ALJ failed to consider all the factors when assessing the consistency of Claimant's symptoms. However, a "formalistic factor-by-factor recitation of the evidence" is not required, "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's" symptoms. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). As

9

set forth above, the ALJ provided numerous reasons, supported by the record, for finding Claimant's symptoms were not as severe or functionally limiting as she alleged. The ALJ's thorough analysis reflects that he considered the location, duration, frequency, and intensity of Claimant's symptoms (R. 20-21); the type and effectiveness of her medications (R. 44-45); and her treatment aside from medication (R. 23). *See* 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3); *see also* SSR 16-3p at *7-8. Nothing more was required.

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this 26th day of January, 2024.

    _____
    D. EDWARD SNOW
    UNITED STATES MAGISTRATE JUDGE